RALEIGH & AUGUSTA AIR-LINE RAILROAD COMPANY v. DAVID A. JENKINS, Public Treasurer.

Where an Act of the legislative branch of the government directs an executive officer to do a specific act, which does not involve any official discretion, but is merely ministerial, as to enter a specific credit upon an account, and the officer refuses to do so, a *mandamus* will be ordered.

The Court has power to compel the Public Treasurer to do only such an act as involves no official discretion, and as is required by an *express command* of the General Assembly.

Under the ordinance of the Convention, made 11th of March, 1868, in favor of the Chatham Railroad Company, the Public Treasurer is not bound to accept in exchange for mortgage bonds of said Company any State bonds issued *after* the passage of the ordinance.

CIVIL ACTION to obtain an order for a *Mandamus*, returned before *Chief Justice Pearson*, at Chambers, in the city of Raleigh, on the 1st day of February, 1873.

The facts are the same as in the foregoing case between the same parties, except that in this case the bonds tendered by the plaintiff, for which were demanded the mortgage bonds of the Chatham Railroad Company, were bonds of the State, some of them issued prior to the ordinance of the Convention, ratified 11th March 1868, and some issued after the passage of said ordinance.

On the return of the summons the defendant filed a special demurrer to the complaint, and Chief Justice PEARSON made the following order : No action of the Court being required, it being informed that either party will appeal, I decide the matter against the defendant, to the end that the case may come up without further security.

From this decision the defendant appealed.

*Attorney General Hargrove,* for appellant.
*Batchelor, Edwards & Batchelor* and *Clark,* contra.

PEARSON, C. J.   We hold, but with much hesitation, that this Court has power by *mandamus* to require the Public Treasurer to accept bonds of the State, and to deliver to the

plaintiff a like amount of the bonds of the Chatham Railroad Company, which he holds by reason of an exchange of State bonds for the bonds of that Company.

It must be admitted that the power of the Courts to compel by the writ of *mandamus*, an executive officer of the government to do certain acts, has been carried to its utmost limit, so as not to violate the provision of the Constitution —that the executive, legislative and judicial powers of the government ought to be forever separate and distinct from each other. Const. Art. I, sec. 8.

It is settled, that when an act of the legislative branch of the government, directs an executive officer to do a specific act which does not involve any official discretion, but is merely ministerial—as to enter a specific credit upon an account, and the officer refuses to do so, a *mandamus* will be ordered. *Kendall* v. *U. S.*, 12 Peters' 524.

By ordinance 11th March, 1868, it is ordained: "The Chatham Railroad Company may at any time before maturity take up the bonds of said company, deposited with the Public Treasurer, by substituting in lieu thereof coupon bonds of the State or other indebtedness of the State."

By an act of the General Assembly, 13th December, 1871, it is enacted: "The said Raleigh & Augusta Air-Line Railroad Company, may at any time hereafter discharge the bonds of the Chatham Railroad Company, deposited with the Public Treasurer in the same manner and not otherwise, as the said Chatham Railroad Company is now authorized by law to do, and the Public Treasurer is hereby directed to return to the said Raleigh and Augusta Air-Line Railroad Company the said bonds of said Chatham Railroad Company, on payment in the manner above prescribed, until the whole amount of said bonds of the Chatham Railroad Company, held by the State, shall be surrendered."

Our doubt was, because of the fact, that there was not one specific act to be done; that is, to hand over the Chat-

ham Railroad bonds, as to hand over "the commissions." *Mabry* v. *Madison*, 1 Cranch 49 ; but the further concomitant act, to receive State bonds of like amount in lieu thereof ; no case has gone further than to commend a single specific act to be done, when required of an executive officer by the legislative branch of the government ; and when it is purely ministerial, and does not involve any official discretion. At first blush it seemed there were too acts to be done, accepting State bonds, and returning the Railroad bonds ; and that inasmuch as there were many classes of State bonds of different values in the market, it might be that the Public Treasurer would be called upon to exercise an official discretion as to the sort of bonds that he ought to receive. We are satisfied that this is not a question of official discretion, but one resting upon the construction of the two statutes above cited, which is purely a question of law. So neither of the acts called for the exercise of "official discretion," and both together amount to but one ministerial act, which he is required to do by acts of the General Assembly. Before doing it the Treasurer was well warranted in calling for a construction of the two statutes by the judicial branch of the government. Let it be noted that we put our power on the ground that there is an express command of the General Assembly that the Public Treasurer shall, upon the tender of State bonds, return a like amount of the Chatham Railroad bonds. This excludes the idea that any creditor of the State can have a *mandamus* against the Treasurer ; for there is no express command of the General Assembly, that the Public Treasurer shall pay all of the debts of the State, and if a claim is presented to him, it must be left to his official discretion as to the time, condition of the Treasury, &c., when he will pay it ; the Court could not interfere in such a case without encroaching upon the powers of the executive department of the government.

R. & A. A. L. R. R. Co. v. JENKINS, Treasurer.

We think it clear that the Public Treasurer ought to receive the State bonds issued in exchange for the Chatham Railroad bonds as it was one transaction. But we are of opinion that the Public Treasurer is not bound to accept any bonds issued after the ordinance made in favor of the Chatham Railroad Company, 11th March, 1868.

The plaintiff is seeking to take an unfair advantage of the State by buying up the most depreciated bonds of the State and tendering them for a return of the Chatham Railroad bonds, which although, by special legislation, the State did surrender its priority as first mortgage creditor, are still worth more in the market than the lowest class of State bonds which the plaintiff is " picking up." As is said, *McAden* v. *Jenkins*, it is well settled, that acts of the General Assembly drafted by " promoters," as they are styled in England, or as we call them " lobby members," are to be construed in a sense most favorable to the State.   In a broad sense, the words of the ordnance 11th March, 1868, include coupon bonds or other indebtedness of the State, as well such as may afterwards be issued as such as were then outstanding.

Taking these words most strongly against the Railroad Company, we take them to mean any coupon bonds now outstanding, or other indebtedness of the State, to-wit: any of the registered bonds that were issued without coupons attached, and were outstanding on 11th March, 1868.

A man makes a deed of trust to secure all of his creditors. The construction settled by the authorities, confines the operation of the trust to creditors at the date of the deed, and excludes subsequent creditors.   So we exclude all bonds issued after the 11th of March, 1868.

PER CURIAM.                                      Ordered accordingly.